United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YEFENG WANG,

Plaintiff,

v.

JOSEPH B. EDLOW, et al.,

Defendants.

Case No. 26-cv-05646-TSH

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 14

## I. INTRODUCTION

Plaintiff Yefeng Wang, who is self-represented, brings this case against Defendants Joseph B. Edlow, Director of U.S. Citizenship and Immigration Services (USCIS), and the USCIS National Benefits Center, alleging Defendants have unreasonably delayed adjudicating his Form I-485 application to adjust status as an asylee and his Form I-730 asylee relative petition, in violation of the Administrative Procedure Act (APA) and the Mandamus Act. Pending before the Court is Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 14. Wang filed an Opposition, ECF No. 16, and Defendants filed a Reply, ECF No. 17. The Court finds this matter suitable for disposition without oral argument and **VACATES** the November 12, 2026 hearing. Civ. L.R. 7-1(b). For the reasons stated below, the Court **DENIES** the motion for the reasons below.[1]

## II. BACKGROUND

### A. Statutory Background

An asylee may apply for adjustment of status to that of lawful permanent resident if the applicant has been physically present in the United States for at least one year after having been

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 4, 7.

granted asylum. 8 U.S.C. § 1159(b)(2). The statute provides that the Secretary of Homeland Security, "in the Secretary's . . . discretion and under such regulations as the Secretary . . . may prescribe, may adjust" the status of an asylee who satisfies five enumerated conditions. *Id.* § 1159(b). Separately, a spouse or child of an asylee "may . . . be granted the same status as the alien if accompanying, or following to join, such alien." 8 U.S.C. § 1158(b)(3)(A). Asylees seek that relief for relatives by filing a Form I-730. Mot. at 6; 8 C.F.R. § 208.21.

Neither statute sets a deadline for adjudication. The APA, however, directs that "within a reasonable time, each agency shall proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), and authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). In addition, Congress has expressed "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b).

**B. Factual Background**

On April 16, 2025, Wang submitted a Form I-485 to adjust status based on his grant of asylum. Compl. at 3, ECF No. 1. USCIS issued a biometrics notice on or about April 21, 2025, and Wang's online case status shows that fingerprints were applied to his case. *Id.* On May 30, 2025, Wang filed a Form I-730 for his spouse, who received a biometrics notice on or about September 19, 2025; and as of October 7, 2025, the online status reported that the I-730 "is still being processed." *Id.* at 3–4.

Wang alleges USCIS's historical national median processing time for an asylee-based Form I-485 in fiscal year 2025 was 10.3 months, and that for a Form I-730 the median was 10.9 months, and that both of his filings have been pending longer than those medians. *Id.* at 4 (citing Ex. 7). Wang alleges he submitted a USCIS service request in December 2025, to which USCIS replied that it was "actively reviewing your application," and that he contacted a congressional office in 2026, but that "[n]one of the action made the Plaintiff's cases move forward." *Id.* He alleges the delay has limited his work authorization (including his ability to renew his commercial driver license), kept him from certain benefits and from international travel needed to expand his business, caused anxiety and stress for his family, and exposes him and his spouse to risk of

removal proceedings. *Id.* at 5.

Wang filed the present complaint on June 11, 2026, asserting claims under the APA, 5 U.S.C. §§ 555(b) and 706(1), and the Mandamus Act, 28 U.S.C. § 1361. Compl. at 5–6. He asks the Court to order Defendants to adjudicate both filings within 30 days. *Id.* at 7.

Defendants filed the present motion on October 5, 2026.

## III. LEGAL STANDARD

### A. 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (cleaned up); *accord Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction. The party asserting federal subject matter jurisdiction must establish it by a preponderance of the evidence. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

A jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *Id.* To overcome a factual challenge, a plaintiff must "support their jurisdictional allegations with competent proof." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (cleaned up). Further, dismissal of a complaint without leave to amend should only be granted where the jurisdictional defect cannot be

United States District Court
Northern District of California

cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B. 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). A document filed by a party representing themselves is "to be liberally construed." *Erickson*, 551 U.S. at 94 (citation omitted); *see Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

Defendants argue 8 U.S.C. § 1252(a)(2)(B)(ii) strips the Court of jurisdiction over any claim about the pace at which USCIS adjudicates an adjustment application. Defendants rely on the complaint's allegations and the statute rather than on evidence contesting the jurisdictional facts. As such, the attack is facial, and the Court takes the complaint's allegations as true. *Safe Air for Everyone*, 373 F.3d at 1039.

Section 1252(a)(2)(B)(ii) provides: "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." The Supreme Court has held that this language reaches only "determinations made discretionary by statute," not those "declared discretionary by the Attorney General himself through regulation." *Kucana v. Holder*, 558 U.S. 233, 236–37 (2010). The Ninth Circuit reads "any other decision or action" "expansively to cover all determinations made in support of a grant of discretionary relief under subsection (ii)." *Zia v. Garland*, 112 F.4th 1194, 1200 (9th Cir. 2024). And it has recently held that the provision "supersedes the default rule that agency actions are reviewable pursuant to federal question jurisdiction and the [APA]." *Chairez v. Mayorkas*, 168 F.4th 1227, 1231 (9th Cir. 2026) (quoting *Vega v. U.S. Citizenship & Immigr. Servs.*, 65 F.4th 469, 471 (9th Cir. 2023)).

Section 1159(b) says the Secretary "may" adjust an asylee's status "in the Secretary's . . . discretion," and "the word may clearly connotes discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) (cleaned up). Wang does not dispute that the ultimate decision whether to grant adjustment is one the statute commits to the Secretary's discretion; instead, he seeks to compel USCIS to adjudicate a matter presented to it. *See* Opp'n at 6 ("Jurisdiction exists because Plaintiff seeks to compel action, not to dictate the outcome of the adjudication."); *id.* at 9 ("Plaintiff does not challenge the Secretary's ultimate discretion to grant or deny [his] green card.").

In their reply, Defendants invoke 8 U.S.C. § 1255(a) as the source of discretion over both the decision and the timing of adjustment. Reply at 2–3. Wang, however, applied for adjustment as an asylee under § 1159(b), not under § 1255(a). This distinction does not itself establish reviewability, as § 1159(b) expressly grants the Secretary discretion over adjustment and authority to prescribe regulations. But the question under § 1252(a)(2)(B)(ii) remains whether Congress specified that the particular decision or action being challenged (i.e., failure to conclude adjudication within a reasonable time) is discretionary. The Court finds the statutory discretion to determine eligibility does not, without more, specify discretion never to resolve a properly presented application. Courts in this District have read § 1159(b) the same way. *See Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1069 n.4 (N.D. Cal. 2014) (*Islam II*) ("Section 1159(b) does not commit the pace of doing so to the agency's discretion.") (quoting *Beyene v. Napolitano*, 2012 WL 2911838 (N.D. Cal. July 13, 2012)).

The Ninth Circuit has not directly addressed whether § 1252(a)(2)(B)(ii) strips jurisdiction over claims challenging USCIS's failure to adjudicate applications. "However, several courts in this District have considered this question and held it does not bar review where the plaintiff seeks to compel adjudication of a pending application rather than review of a discretionary decision already made." *Dinh v. Edlow*, 2026 WL 2001155, at *4 (N.D. Cal. July 10, 2026) (collecting cases). "As have courts from outside this District." *Id.* (collecting cases).

In their reply, Defendants cite four Circuit court decisions in which the courts held USCIS had discretion regarding "whether and how to adjust [the status of applications]," which meant the court "lack[ed] jurisdiction to review both the decision to put . . . applications on hold *and* the 'inextricably intertwined' process 'prescribed' by the Secretary for reaching that decision." *Geda v. Dir., USCIS*, 126 F.4th 835, 843-44 (3d Cir. 2025) (alteration in original); *see also Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024) (discretion includes "actions taken in the course of the decision-making process – including the pace at which that process is undertaken"), *cert. denied*, __ U.S. , 145 S. Ct. 1126 (2025); *Thigulla v. Jaddou*, 94 F.4th 770, 776 (8th Cir. 2024); *Kanapuram v. Dir., USCIS,* 131 F.4th 1302, 1306-07 (11th Cir. 2025); *Kale v. Alfonso-Royals,* 139 F.4th 329, 335 (4th Cir. 2025). These cases, though, address the factually distinct scenario of

visa retrogression, which occurs when demand for a visa category causes the category to become over-subscribed, in which case USCIS pushes back the cut-off date for when applicants can be approved. *Kale,* 139 F.4th at 333. USCIS created an internal policy to hold in abeyance the applications affected by visa retrogression. *Id.* Thus, unlike the case before this Court, visa retrogression involves a clear affirmative step: the recategorization of applications impacted by visa retrogression. Here, Defendants have not identified any similar policy that explains the delay in adjudicating Wang's applications, nor have they taken any steps on his applications. Therefore, the visa-retrogression cases provide no support for Defendants' position. *See Agrawal v. Edlow,* __ F. Supp. 3d __, 2026 WL 2363473, at *5, 6-7 (N.D. Cal. Aug. 14, 2026) (noting *Geda, Cheejati, Thigulla, Kanapuram,* and *Kale* did not change finding that USCIS does not have discretion under the INA to refuse to adjudicate plaintiffs' applications); *Kale v. USCIS,* __ F. Supp. 3d __, 2026 WL 2324900, at *5 (N.D. Cal. Aug. 11, 2026) (same); *Jamdar v. Edlow*, 2026 WL 1763856, at *3 (N.D. Cal. June 18, 2026) (same). The Fourth Circuit, moreover, expressly distinguished an identified agency hold policy from mere inaction. *Kale*, 139 F.4th at 335–37. The court there acknowledged "persuasive authority that mere inaction is insufficient to constitute a 'decision or action' under the similar language of 8 U.S.C. § 1252(a)(2)(B)(ii)," but found that a hold policy was "not merely a case of agency inaction." *Id.* at 335

The Court here follows these decisions, as Wang's particular claim challenges an asserted failure to perform a discrete duty, not the decision itself. *See Dinh*, 2026 WL 2001155, at *4–5; *Delgosha v. Mullin*, 2026 WL 1762695, at *6-9 (N.D. Cal. June 18, 2026) (denying motion to dismiss a § 706(1) claim concerning a naturalization application under 8 U.S.C. § 1446, where the defendants did not invoke § 1252 and the plaintiff alleged an adjudication hold). This "conclusion is consistent with the 'well-settled' and 'strong' presumption in favor of judicial review of administrative action, *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020), which courts 'consistently' apply to 'legislation regarding immigration,' *Kucana v. Holder*, 558 U.S. 233, 251 (2010)." *Murugesan v. Edlow*, 2026 WL 1694668, at *4 (N.D. Cal. June 11, 2026).

Defendants argue that, under *Poursina v. U.S. Citizenship & Immigr. Servs.*, 936 F.3d 868 (9th Cir. 2019), a regulation can neither make a statutorily discretionary decision reviewable nor

make a non-discretionary one unreviewable. Mot. at 10. But *Poursina* does not help Defendants. There the plaintiff argued that a regulation should inform the meaning of a statutory discretionary standard, while the Ninth Circuit held that a regulation neither creates nor removes statutory discretion. *Poursina*, 936 F.3d at 874–75. Here, the Court does not rely on any USCIS regulation for the duty to act. That includes 8 C.F.R. § 209.2(f), on which Wang relies. Opp'n at 4. The source of the obligation is the APA itself: an agency "shall" conclude a matter presented to it "within a reasonable time." 5 U.S.C. § 555(b). The relevant statutory discretion in § 1159(b), by contrast, concerns whether to grant adjustment, not whether to decide an application at all. That distinction is why the claim here is not circular, as Defendants contend. Mot. at 9. The Court does not use the APA to *create* jurisdiction over a decision the INA commits to the Secretary's discretion; it concludes that the INA does not specify discretion over the conduct Wang challenges, so that the bar never applies and the APA's ordinary rule of reviewability governs. *Vega* and *Chairez* are consistent with that conclusion. *Chairez*, for example, concerned USCIS's denial of a waiver of inadmissibility and held that a decision expressly committed to the Secretary's discretion was unreviewable. 168 F.4th at 1230–31. Neither case addressed a failure to adjudicate an application. Wang makes the same point. Opp'n at 10 ("*Patel*, *Zia*, and *Chairez* all involved challenges to affirmative, finalized, completed agency actions") (emphasis omitted).

Defendants also argue the pace of adjudication is "an incident of" the discretionary adjustment function. Reply at 2. They point to 8 U.S.C. § 1447(b), which gives a naturalization applicant a remedy when no determination issues within 120 days after the examination, as showing that Congress sets adjudication deadlines when it wants them. Reply at 2–3. Section 1447(b) shows that Congress addressed the naturalization context specifically. It does not show that Congress exempted other applications from the APA's general requirement that an agency conclude a matter presented to it "within a reasonable time." 5 U.S.C. § 555(b). And Defendants' related concern that review would intrude on how USCIS allocates resources and sequences cases, Reply at 2, goes to the scope of any relief and to the fourth *TRAC* factor, not to reviewability. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64–65 (2004).

Finally, the Court notes that a claim under § 706(1) "can proceed only where a plaintiff

asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Id.* at 64 (emphasis added). Adjudicating a properly filed application is such an action, and § 555(b) requires that it occur within a reasonable time. The Court accordingly concludes that § 1252(a)(2)(B)(ii) does not deprive it of jurisdiction over Wang's claim regarding Form I-485.[2]

As to Wang's Form I-730 claim, Defendants contend that decisions filed by an asylee are discretionary because § 1158(b)(3)(A) provides that a relative "may . . . be granted" derivative asylum status. Mot. at 6. But the analysis is the same as for Form I-485. *See Dinh*, 2026 WL 2001155, at *5 (the doctrine "does not turn on the petition type at issue"); *Concepcion v. Mullin*, 2026 WL 1388761, at *8 n.7 (S.D. Cal. May 18, 2026) (collecting cases finding jurisdiction over delay claims involving other benefit types, including an I-730 petition). The word "may" shows that the ultimate decision is discretionary; it does not specify discretion to decline to decide. The Court therefore also has jurisdiction over Wang's claim that USCIS has unreasonably delayed adjudicating the Form I-730. This conclusion does not empower the Court to direct USCIS to approve either application. *See Norton*, 542 U.S. at 65 (a court "can compel the agency to act, but has no power to specify what the action must be").

Because § 1252(a)(2)(B)(ii) does not apply, its reference to 28 U.S.C. § 1361 does not bar Wang's Mandamus Act claim either. *See Yousefisahi v. Edlow*, 2026 WL 1388704, at *6 (N.D. Cal. May 18, 2026) ("The duty to complete adjudication within a reasonable time is mandatory, and therefore subject to judicial review notwithstanding § 1252(a)(2)(B)(ii), whether under the mandamus statute or under the APA."). Accordingly, the Court **DENIES** Defendants' motion to the extent it seeks dismissal under Rule 12(b)(1).

**B. Failure to State a Claim**

Defendants next argue that even if the Court has jurisdiction over Wang's claims, dismissal is appropriate under Rule 12(b)(6) because he has not pleaded sufficient facts to support a claim of unreasonable delay under the APA. Mot. at 13-18.

[2] Defendants also invoke 8 U.S.C. § 1252(a)(2)(B)(i), which bars review of specified judgments regarding relief under provisions including 8 U.S.C. § 1255. Mot. at 7. Wang seeks adjustment as an asylee under § 1159(b), which is not one of the provisions enumerated in clause (i).

United States District Court
Northern District of California

Under the APA, an agency must conclude a matter presented to it "within a reasonable time," 5 U.S.C. § 555(b), and a court may "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). The reasonableness of any delay is analyzed under "the so-called *TRAC* factors." *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984) (*TRAC*)). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022) (quoting *TRAC*, 750 F.2d at 80). The factors are not "ironclad," and the Court may weigh them as the circumstances warrant. *See Indep. Mining Co.*, 105 F.3d at 507.

Courts may apply the *TRAC* factors on a motion to dismiss, but several courts have declined to do so, noting the fact-intensive nature of the *TRAC* inquiry makes it difficult to resolve at the pleading stage. *See, e.g., Dinh*, 2026 WL 2001155, at *6 (although the defendant had moved only under Rule 12(b)(1), court observed that dismissal based on the government's stated "policy would be inappropriate because there is no evidence before the Court regarding its implementation as to Plaintiffs' petitions") (citing *Nandu v. Renaud*, 2021 WL 5986917, at *3 (C.D. Cal. Sept. 24, 2021) ("Given the fact-intensive nature of unreasonable delay claims, and because the grounds for agency delay will often be unknown to plaintiffs at the pleading stage, a number of courts have found that unreasonable-delay claims are best resolved on or after summary judgment, not on motions to dismiss for failure to state a claim.") (collecting cases)); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021) ("A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be

resolved at that stage."); *Savchuk v. Jaddou*, 2024 WL 4183468, at *4 (C.D. Cal. Aug. 20, 2024) ("Although the parties have briefed the *TRAC* factors and disagree whether there has been an unreasonable delay, the Court finds it inappropriate to conduct the fact-analysis at this stage."); *Tigranyan v. Garland*, 2024 WL 3740049, at *4 (C.D. Cal. July 1, 2024) ("[B]ecause the *TRAC* factor analysis is necessarily fact-intensive, it is more appropriately applied after some discovery than at the pleading stage."). And several courts have permitted limited discovery to properly assess the *TRAC* factors in cases involving USCIS's adjudication of affirmative asylum applications. *See S. Y. v. Sec'y of the Dep't of Homeland Sec.*, 2026 WL 1896219, at *4 (N.D. Cal. July 1, 2026); *Salarian v. Blinken*, 2024 WL 4008758, at *4 (S.D. Cal. Aug. 30, 2024); *Munoz-Barba v. Mayorkas,* 2024 WL 2818850, at *14 (N.D. Cal. June 3, 2024); *Tailawal v. Mayorkas*, 2022 WL 4493725, at *4 (C.D. Cal. Aug. 18, 2022).

Wang alleges: his Form I-485 and Form I-730 have been pending since April and May 2025, well beyond the 10.3- and 10.9-month median processing times attached to the complaint; Congress has expressed the sense that applications should be processed within 180 days, 8 U.S.C. § 1571(b); and the delay has harmed his employment, including his ability to renew his commercial driver license. Compl. at 3–5.[3] Defendants respond that USCIS generally processes applications in the order received and that its currently posted processing time for asylee-based Form I-485 applications is 34.5 months. Mot. at 4, 13–14. Wang disputes the significance of that figure. Opp'n at 12. The Court may take judicial notice that USCIS's webpage says what it says, but not of the truth of disputed matters stated on it. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1000 (9th Cir. 2018). And, as in *Dinh*, there is no evidence before the Court

---

[3] In his opposition, Wang elaborates on the harm he alleges, stating he has had to leave commercial driving for lower-paying work and that restoring his license will require retaking the commercial driving examination. Opp'n at 15–16. He attaches his expired commercial driver license and a California Department of Motor Vehicles notice. *Id.* at 20–21. However, the Court generally may not consider new factual allegations in an opposition brief in ruling on a Rule 12(b)(6) motion. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Regardless, the complaint's allegation concerning Wang's commercial driver license is enough at this stage. The additional facts and Exhibit 1 may bear on the TRAC analysis on a developed record. The DMV notice states that the DMV cannot currently issue non-domiciled commercial driver licenses without federal authorization, Opp'n at 21, and whether and how the pending application affects Plaintiff's ability to obtain a license is a factual question the Court does not decide now.

regarding how the agency's practice has been applied to Wang's applications. *See Dinh*, 2026 WL 2001155, at *6. It is true that some courts have dismissed delay claims at the pleading stage. *See, e.g., Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340-46 (D.C. Cir. 2023) (affirming Rule 12(b)(6) dismissals of EB-5 Form I-526 delay claims after waits of several years, where USCIS applied a rule of reason, Congress set no deadline, and the alleged harm was primarily financial); *Pimpalkhute v. Edlow*, 2026 WL 1283512, at *5-7 (W.D. Wash. May 11, 2026) (dismissing without prejudice EB-5-based Form I-485 delay claims pending about six months at filing and under a year at briefing). But those decisions are not binding and differ in ways that matter at this stage. In *Da Costa*, the plaintiffs' own complaints pleaded USCIS's published visa-availability queue, their counsel conceded it "makes sense," and the court held they had not plausibly alleged that USCIS departed from it. 80 F.4th at 341. The case also involved a statutory priority rule for employment-based visas. 8 U.S.C. § 1153(e)(1). Here, the complaint pleads no rule of reason, Defendants identify no comparable statutory ordering requirement for asylee adjustment or Form I-730 petitions, and the only support for the practice is Defendants' description of it in their motion. *Da Costa* also treated § 1571(b)'s 180-day period as "a ruler against which the [agency's] progress must be measured," which supports Wang's reliance on it. *Id*. at 344. In *Pimpalkhute*, the applications had been pending for about six months when suit was filed, and the court stated that its ruling rested on that short period. 2026 WL 1283512, at *6. Wang's applications had been pending for about fourteen and twelve months when he sued.

In their reply, Defendants argue that pleading sufficiency must be evaluated as of the complaint's filing, rather than by adding months that elapsed during litigation. Reply at 4. The Court agrees for purposes of this motion and does not rely on delay accumulating after Wang filed his complaint on June 11, 2026. Nor is § 1571(b)'s 180-day statement an enforceable deadline; it expresses a congressional aspiration that can inform, but does not determine, the second *TRAC* factor. *See Da Costa*, 80 F.4th at 344. Historical nationwide median processing times likewise neither establish a legal deadline nor by themselves demonstrate that an application is unlawfully delayed. Defendants' asserted 34.5-month figure does not conclusively show reasonableness either, particularly where it is not established on the pleadings how the measure was calculated or

United States District Court
Northern District of California

whether the agency has applied any queue or processing policy to these two petitions.

Defendants cite decisions finding adjustment delays reasonable. Mot. at 14–16. But those decisions are distinguishable. *Taiebat v. Scialabba*, 2017 WL 747460, at *4 (N.D. Cal. Feb. 27, 2017), denied a request for preliminary injunctive relief compelling USCIS to adjudicate an employment-based adjustment application that had been pending approximately 20 months. The court found the plaintiff had not established a likelihood of success on his unreasonable-delay claim or demonstrated irreparable harm. *Id*. at *4–5. However, Taiebat did not address whether the plaintiff stated a plausible claim under Rule 12(b)(6). Rather, it considered whether he had satisfied the heightened standard for mandatory preliminary relief. *Id*. at *2–3. In *Islam v. Heinauer*, 2011 WL 2066661, at *7–8 (N.D. Cal. May 25, 2011) (*Islam I*), the court found an approximately three-year delay in adjudicating an asylee's adjustment application was not unreasonable. However, the court reached that conclusion on summary judgment, based on evidence that USCIS had placed the application on hold because of an individualized terrorism-related inadmissibility concern while officials considered a possible exemption. *Id*. Indeed, the court denied the government's motion to dismiss for failure to state a claim. *Id*. at *4. The same plaintiff later prevailed. After nearly six years, and with no indication from the government of when it would decide, the court held the delay unreasonable and ordered adjudication within 30 days. *Islam II*, 32 F. Supp. 3d at 1072–74. *Islam II* described the District's four-years-or-less benchmark in the setting of terrorism-related hold cases, observing that "the length of the delay is often one of the most salient facts for a reviewing court to consider," *id.* at 1071, and it treated § 1571(b) as tipping the second *TRAC* factor toward the plaintiff, *id.* at 1073. *Cai v. U.S. Citizenship & Immigr. Servs.*, 2026 WL 1907376, at *4–5 (N.D. Cal. May 28, 2026), found an approximately two-year delay reasonable on summary judgment after considering evidence of first-in, first-out processing, but only after holding that § 1252(a)(2)(B)(ii) does not bar review of the pace of adjudication, *id.* at 3–4. *Gowda v. Edlow*, 2026 WL 1793078, at *2– 3 (N.D. Cal. June 2, 2026), dismissed without prejudice an unreasonable-delay claim involving an EB-5 investor's adjustment application that had been pending approximately 14 months. Although the defendant had sought dismissal only for lack of subject matter jurisdiction, the court rejected that argument

but independently dismissed the complaint on the merits after supplemental briefing. *Id.* The court relied on decisions finding adjustment delays of less than four years reasonable, as well as a USCIS policy memorandum addressing the factors officers must consider when adjudicating adjustment applications. *Id.* at *3. Here, by contrast, Wang seeks adjudication of an asylee-based adjustment application and a derivative-asylum petition, and Defendants have not invoked the policy memorandum on which *Gowda* relied. Moreover, *Gowda* did not address allegations that the delay impaired the applicant's ability to maintain employment, as Wang alleges here. Although *Gowda* supports Defendants' argument that a delay of approximately 14 months may be reasonable, it does not establish that Wang's particular allegations fail to state a plausible unreasonable-delay claim.

The relatively brief delay favors Defendants under the first *TRAC* factor, and the Court takes seriously the fourth factor's concern that ordering one applicant ahead could impede other applicants or competing agency responsibilities. *See Da Costa*, 80 F.4th at 340–45; *Pimpalkhute*, 2026 WL 1283512, at *5–7 (dismissing considerably shorter delay claims). The second factor does not favor Defendants. Although § 1571(b) sets no deadline, Wang's applications had been pending well beyond the 180 days Congress described, and courts treat that statement as bearing on the rule of reason. *See Da Costa*, 80 F.4th at 344 ("This factor somewhat favors Plaintiffs, as they have waited longer than 180 days."); *Islam II*, 32 F. Supp. 3d at 1073. On the other hand, Wang alleges a concrete effect on his commercial-driving work and the welfare of his family, allegations relevant to the third and fifth factors. The sixth factor requires no showing of bad faith. The Court cannot assess the actual effect of competing priorities or USCIS's claimed processing practice from counsel's description alone. *Dinh*, 2026 WL 2001155, at *6. The Court therefore concludes that, although success on the merits is far from established, Wang's allegations suffice to state a plausible unreasonable-delay claim at this stage.

Defendants also argue the requested 30-day deadline could interfere with requests for evidence, interviews, and other required adjudicative steps. Reply at 4–5; *see* 8 C.F.R. § 103.2(b)(8)–(9). But the relief requested is not itself the measure of whether Wang states a claim. The Court neither directs USCIS to complete adjudication within 30 days nor determines what

deadline, if any, would be appropriate on an evidentiary record. Likewise, it does not rely on additional allegations or exhibits first submitted with Plaintiff's opposition to supply missing allegations in the complaint. *See Schneider*, 151 F.3d at 1197 n.1.

Accordingly, the Court **DENIES** Defendants' motion to dismiss under Rule 12(b)(6).

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' motion to dismiss. Defendants shall file a response to the complaint within 14 days. *See* Fed. R. Civ. P. 12(a)(4)(A). If Wang has not already done so, Defendants shall file a motion for summary judgment within 60 days of their answer.

**IT IS SO ORDERED.**

Dated: November 2, 2026

THOMAS S. HIXSON
United States Magistrate Judge